IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| STaSIS, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:11cv117 |
| | ) |
| JOEL SCHURTZ, et al., | ) By: Michael F. Urbanski |
| | ) United States District Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on the motion of plaintiff STaSIS, Inc. ("STaSIS"), for a Temporary Restraining Order necessary to protect the integrity of its confidential business information. A Verified Motion for Temporary Restraining Order and Supporting Memorandum (Dkt. # 11) was filed on January 19, 2012, and an evidentiary hearing was held on January 20, 2012.

For the reasons stated in open court and summarized herein, the court will grant a Temporary Restraining Order ("TRO") prohibiting defendants from any use of STaSIS's confidential information until an expedited Preliminary Injunction hearing can be held.[1] The TRO also prohibits defendants, or anyone in active concert or participation with them, from advertising, marketing, selling, or offering for sale any product designed, engineered, or manufactured by means of information taken by defendants from STaSIS.

I.

This dispute arises out of the 2011 acquisition by STaSIS of all of the assets of Eurojet Development, Inc. ("Eurojet"). Defendants are former officers and/or employees of Eurojet. In

---

[1] It is anticipated that the Preliminary Injunction hearing will be held between February 8-10, 2012.

association with the Eurojet asset purchase, defendants were employed by STaSIS and signed employment and/or confidentiality agreements. Defendants left the employ of STaSIS in the fall of 2011, and STaSIS asserts that they took STaSIS's confidential business information with them in violation of the law and their agreements with STaSIS.[2] STaSIS avers that defendants recently have become employed with a Canadian company, 9139-0575 Quebec, Inc. d/b/a Unitronic-Chipped ("Unitronic-Chipped").

STaSIS asserts in its motion that Unitronic-Chipped, which heretofore had been involved in the software business, recently announced its intention to sell a certain performance automotive hardware component replicating a STaSIS product, the Eurojet Modular V-Banded Downpipe. STaSIS asserts that the design of this Modular V-Banded Downpipe being marketed by Unitronic-Chipped is proprietary to it and could only be available at this time to Unitronic-Chipped through the use of its proprietary information taken by defendants. In short, STaSIS contends that the timing of defendants' departure, the misappropriation of STaSIS's confidential information, and the timing of the announcement of the Unitronic-Chipped Modular V-Banded Downpipe compels the conclusion that it was the product of commercial theft, rather than legitimate innovation and competition.

## II.

At the TRO hearing, Linda Wagner, a computer consultant for STaSIS, testified that a substantial quantity of STaSIS's technical data was removed from a STaSIS-owned laptop assigned to defendant Ronnie Jackson. The data removal took place over a weekend immediately prior to defendant Jackson's departure from STaSIS. Wagner was able to identify the data removed by use of computer forensic tools. Exhibits introduced at the TRO hearing

---

[2] Defendant Joel Schurtz asserts that STaSIS breached its obligations under his employment agreement, giving rise to his decision to leave its employ.

2

establish that the data taken was technical in nature and certain of it concerned the Modular V-Banded Downpipe. Wagner also testified that following the filing of the suit, she examined a SD card identified to her as being provided by defendant Jackson. She further testified that this card contained a copy of some, but not all, of the data removed from Jackson's STaSIS laptop immediately before his departure from STaSIS.

Paul Lambert, STaSIS's CEO, also testified at the TRO hearing. Lambert explained that STaSIS acquired all of the assets of Eurojet in June 2011, and that defendants, formerly associated with Eurojet, became STaSIS employees and executed confidentiality agreements with STaSIS. Defendant Joel Schurtz, formerly the President of Eurojet, resigned from STaSIS on October 14, 2011. Two days after Schurtz's departure from STaSIS, defendant Jackson left STaSIS. Examination of defendant Jackson's laptop led to concerns about the misappropriation of STaSIS's confidential business information. This lawsuit ensued.

Lambert testified that STaSIS is in the business of engineering and manufacturing performance automotive hardware for Audi vehicles, and that it had a close relationship with Audi allowing its products to be subject to Audi maintenance and warranty programs. Lambert testified that its close relationship with Audi was innovative in the performance automotive component industry and critical to the success of his company. STaSIS was interested in expanding its product line and developing this same sort of relationship with Volkswagen, and the Eurojet assets were acquired to facilitate such a relationship. Lambert testified that its planned business relationship with Volkswagen was at a critical stage and that the entrance into the market by Unitronic-Chipped, selling performance automotive hardware for the first time, and specifically a Modular V-Banded Downpipe that appears to be identical in design to the proprietary product sold by Eurojet and now owned by STaSIS, would irreparably injure the

prospect of its relationship with Volkswagen in a manner that would be difficult to quantify. Lambert testified that the Modular V-Banded Downpipe could not have been reengineered in the brief period since defendants left STaSIS, and that it would take roughly a year for his engineers to do so. Lambert testified that while other companies market "one piece of a complete puzzle," his company's downpipes are a complete modular system that may be configured in a variety of manners. This modular concept, Lambert explained, is unique. Lambert also testified that the STaSIS documents missing on the SD card returned by defendant Jackson did not appear to be random; rather, they related to an Audi product he understood was going to be released by Unitronic-Chipped in the near future.

Defendants offered no testimony at the TRO hearing. They argued that STaSIS did not own the Eurojet information because STaSIS had breached its employment agreement with defendant Schurtz; that there was no existing relationship between STaSIS and Volkswagen which could be irreparably harmed; that Unitronic-Chipped had made no announcement of an entry into the Audi line; and that STaSIS had not established any irreparable injury warranting the extraordinary remedy of a TRO. Unitronic-Chipped, not a party to the case, was not present at the TRO hearing.

## III.

Based on the evidence introduced at the TRO hearing, STaSIS has established the following facts:

1. Immediately prior to defendant Jackson's resignation from STaSIS, certain of its confidential business information, including technical data, was removed from the STaSIS laptop Jackson used while in STaSIS's employ.

4

2. A copy of some, but not all, of the data removed from defendant Jackson's STaSIS laptop was returned to STaSIS on a SD card following filing of the lawsuit.

3. Defendants Schurtz and Jackson currently are employed at Unitronic-Chipped.

4. Unitronic-Chipped has been in the software business, and until recently, had not marketed any performance automotive hardware.

5. Unitronic-Chipped announced the release of an exclusive modular hardware line on January 19, 2012.

6. The announcement indicated that the first hardware item to hit the market was a Modular 3" V-Banded Downpipe.

7. This Modular 3" V-Banded Downpipe appears to be virtually identical to a Eurojet product owned by STaSIS.

8. A Eurojet product is visible at the top of the website page announcing the release of the Unitronic-Chipped Modular 3" V-Banded Downpipe. See TRO Hearing Exhibit 5A.

9. STaSIS purchased Eurojet to expand its product line and develop a strategic relationship with Volkswagen. STaSIS is in negotiations with Volkswagen, and the competitive use of its proprietary information poses a threat to those negotiations.

## IV.

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, 555 U.S. 7, 24 (2008); Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds and remanded, 130 S. Ct. 2371 (2010), reaff'd in part and remanded, 607 F.3d 355 (4th Cir. 2010). It is a remedy that is "granted only sparingly and in limited circumstances." MicroStrategy, Inc. v.

5

Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001). Thus, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. A preliminary injunction cannot be issued unless all four of these elements are met. Id. Preliminary injunctions are meant to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003).

Although the Fourth Circuit's ruling in Real Truth About Obama focused on preliminary injunctions, its redefined analysis also applies to the issuance of a temporary restraining order. See Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir.1999) (applying the same factors to a temporary restraining order and a preliminary injunction); Simpkins v. Gressette, 495 F. Supp. 1075, 1079 (D.S.C. 1980) (same); see also Neiswender v. Bank of Am., No. 09–2595, 2009 WL 1834406, at *1 (N.D. Cal. June 23, 2009) (ruling on a temporary restraining order by applying the same test adopted in Winter and applied in Real Truth About Obama).

Based on the evidence presented at the TRO hearing, the court believes that STaSIS has satisfied all four requirements for a TRO. The evidence suggests that defendant Jackson misappropriated confidential business information upon his departure from STaSIS. A copy of some, but not all, of this information was returned to STaSIS after this lawsuit was filed. Shortly after leaving STaSIS, defendants Jackson and Schurtz began working for Unitronic-Chipped. Within a few months of defendants coming to work for it, Unitronic-Chipped, theretofore a software company, announced its entry into the performance automotive hardware market. The

first product released by Unitronic-Chipped appears to be virtually identical to a Eurojet product, and the website page announcing its release contained a visible image of a Eurojet product. This release comes at a critical time in STaSIS's efforts to forge a relationship with Volkswagen similar to what it has with Audi. Lambert testified that the development of this relationship with Volkswagen is vital to STaSIS's business and concerns over misappropriation of its confidential technical data would harm that relationship. As such, based on the evidence available to the court at the TRO hearing, STaSIS appears likely to succeed on the merits of its legal claims arising out of the removal of its information from defendant Jackson's laptop.

The Fourth Circuit has explained, "the required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'" Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citing ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3rd Cir. 1987) ("Establishing a risk or irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury'")); see also In re Microsoft Corp. Antitrust Litig., 333 F.3d at 525. On this record, STaSIS has established that: (1) confidential business information owned by STaSIS was removed from a laptop assigned to defendant Jackson a few days prior to his resignation in October 2011; (2) this information included technical information on the Modular V-Banded Downpipe; (3) defendants Schurtz and Jackson began working for Unitronic-Chipped, a software company which previously had not been in the performance automotive hardware business; (4) within a short period of time, Unitronic-Chipped announced its entry into the performance automotive hardware market with the sale of a Modular V-Banded Downpipe, which appears to be virtually identical in design to the Eurojet product owned by STaSIS; and (5) the Unitronic-Chipped website page announcing the new product contains a visible image of a Eurojet product. This is not a case where the

7

acquisition of confidential business information and its use by a competitor appears speculative or remote. On this record it appears likely. As such, the harm to STaSIS appears both actual and imminent.

The balance of equities tips in STaSIS's favor because there is no equity in defendants' use of information proprietary to STaSIS in violation of their statutory, common law, and contractual obligations. In short, it is impermissible for defendants to sell the assets of their company to STaSIS, go to work at STaSIS for a short period of time under confidentiality agreements, and then leave STaSIS to work for a new competitor, taking with them and using STaSIS's confidential business information to develop a product that appears to be virtually identical to that sold by STaSIS. The public interest is served by prohibiting the misappropriation of another's confidential business information, and a TRO is necessary to preserve the status quo and prevent any further use of STaSIS's confidential business information pending the scheduling of an expedited Preliminary Injunction hearing.

As stated at the TRO hearing, it is not lost on the court that Unitronic-Chipped was not present at the hearing. Indeed, by this TRO, the court does not preclude Unitronic-Chipped or, for that matter, defendants, from engaging in any legitimate and lawful business. The TRO is narrowly tailored only to enjoin defendants, and anyone in active concert and participation with them, from using any confidential business information misappropriated from STaSIS.

## V.

For the reasons stated in open court and summarized herein, defendants are **ENJOINED** from the use of any confidential information misappropriated from STaSIS until an expedited Preliminary Injunction hearing can be held. The TRO also prohibits defendants, or anyone in active concert or participation with them, from advertising, marketing, selling, or offering for

sale any product designed, engineered, or manufactured by means of information taken by defendants from STaSIS.

Pursuant to Federal Rule of Civil Procedure 65(c), a district court must fix a bond whenever it grants a temporary restraining order. The district court has discretion in fixing the amount for the security bond, and its amount ordinarily depends on the gravity of the potential harm to the enjoined party. Nan Ya Plastics, 174 F.3d at 421 n.3. Based on the existing record, it appears that STaSIS is likely to prevail on its claim that defendants misappropriated confidential business information. Further, the TRO is narrow in substantive scope as it only prohibits use of confidential business information taken from STaSIS. Also, the TRO is short-lived, as the Preliminary Injunction hearing will be heard two weeks from now. As such, the court finds that a bond of $50,000.00 is appropriate under the specific circumstances of this case.

An appropriate Order will be entered.

Entered: January 25, 2012

/s/ Michael F. Urbanski
Michael F. Urbanski
United States District Judge